## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------
                                     X
                                     :
UNITED STATES OF AMERICA             :   Criminal No.  3:91-00170 (ADC)
                                     :
                                     :
v.                                   :
                                     :
                                     :
                                     :
[9] JULIO LUCIANO MOSQUERA,          :
Defendant.                           :
                                     :
------------------------------------X
```

## STIPULATION AND JOINT MOTION REGARDING COMPASSIONATE RELEASE

TO THE HONORABLE COURT:

The United States of America and Mr. Luciano-Mosquera, through undersigned counsel, jointly and respectfully move the Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to reduce defendant Julio Luciano-Mosquera's sentence.  To that end, it is hereby stipulated and agreed as follows:

### INTRODUCTION

1.     Mr. Luciano-Mosquera has served 359 months of a 511-month sentence of imprisonment.  He entered prison at age 20, and in less than five weeks (on March 27), he will reach 30 years in prison on this case.  He is now 50 years old, and his projected release date is September 17, 2027.  Mr. Luciano-Mosquera is the last remaining individual incarcerated in this case, despite his minor role in the offense. Because the government and the defendant agree that there are extraordinary and compelling reasons justifying Mr. Luciano-Mosquera's release, the parties submit this stipulation and motion and jointly request a reduction in his sentence to time served.

2.      In 1992, Mr. Luciano-Mosquera was found guilty after trial of importing and possessing with intent to distribute in excess of five kilograms of cocaine (and of conspiring to import the cocaine), in violation of 21 U.S.C. §§ 963, 952 and 841(a)(1), and of aiding and abetting the possession of a machine gun in relation to those offenses, in violation of 18 U.S.C. § 924(c)(1).  The case involved a month-long conspiracy to bring cocaine by boat to Puerto Rico from the Dominican Republic.  It ended with arrests on March 27, 1991.  Mr. Luciano-Mosquera became involved only at the very end, to help offload the narcotics.

3.      Because of the large quantity of drugs involved in the conspiracy, the base offense level under U.S.S.G. § 2D1.1 was 38.  Mr. Luciano-Mosquera received a two-level reduction based on his minor role, resulting in a total offense level of 36.  He had no criminal history points, so his Guidelines range for the drug counts was 188 to 235 months.  Because Mr. Luciano-Mosquera was sentenced prior to the Supreme Court's rulings in *United States v. Booker*, 543 U.S. 220 (2005) and *Dean v. United States*, 137 S. Ct. 1170 (2017), the imposition of at least 188 months on those counts was mandatory.

4.      On the § 924(c) count, the mandatory minimum (and mandatory consecutive) sentence was 30 years.  When added to the concurrent 188-month sentences on the drug counts, the total sentence was 45 years and 8 months.  On August 19, 2015, pursuant to Amendment 782 to the Guidelines (the so-called "drugs minus two" amendment, which the Sentencing Commission made retroactive), Mr. Luciano-Mosquera's sentence on the drug counts was reduced to 151 months.  (ECF No. 567).  Thus, his amended total sentence was 511 months, or 42 years and 7 months.

5.     As noted below, if sentenced today, Mr. Luciano-Mosquera would very likely have received a much lower sentence—one that, considering good time, would have resulted in his release about five years ago. Moreover, some defendants with greater culpability have been released from custody for decades.[1]

## THE LEGAL STANDARD

6.     On December 21, 2018, former President Donald J. Trump signed the First Step Act into law.  Among other criminal justice reforms, it amended 18 U.S.C. § 3582(c)(1)(A)(i) to permit defendants to seek sentence reductions based on extraordinary and compelling reasons  as long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ('BOP') to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

7.     The First Step Act made this amendment to § 3582(c) for the explicit purpose of "increasing the use" of such sentence reductions.  *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) ("After watching decades of the BOP Director's failure to bring any significant number of compassionate release motions before the courts, Congress allowed people

---

[1] [1] *See infra*, ¶ 13.  Luis Soltero-Lopez was released on February 25, 2005; [2] Carlos Pagan San Miguel was released on December 28, 2020 pursuant to a stipulation with the United States; [3] Jose Perez-Perez was released in 2004; [4] Eric Rodriguez-Baez was released on March 13, 1998; [5] Rafael Pava-Buelba was released on December 15, 2003; [6] Edgar Gonzalez-Valentin was released on December 1, 2016 after having the remainder of his sentence commuted by President Barack Obama on September 13, 2016; [7] Raul Lugo-Maya was released on June 27, 2003; [8] Jonas Costillo-Ramos was released on August 9, 1995.

seeking compassionate release to avoid BOP."); *see also United States v. McCoy*, 981 F.3d 271,

274 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1110 (6th Cir. 2020); *United States v.*

*Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020).  The amended statute calls upon district judges to

determine whether "extraordinary and compelling reasons" warrant a reduction in sentence.  It

also requires that any reduction be consistent with the applicable policy statements in the

Guidelines Manual.  However, because the Sentencing Commission has lacked a quorum for

several years, and thus has not amended USSG §1B1.13 since the First Step Act was passed, all

four federal courts of appeals that have addressed the issue have held there is no "applicable"

policy statement governing sentence-reduction motions filed by defendants (as opposed to by the

BOP).  As a result, those courts have held that district courts are "empowered . . .  to consider

any extraordinary and compelling reason for release that a defendant might raise." *Brooker*, 976

F.3d at 230; *McCoy*, 981 F.3d at 284; *Jones*, 980 F.3d at 1103; *Gunn*, 980 F.3d at 1180.  A large

and growing number of courts have granted sentence reductions in cases involving unusually

long sentences mandated by § 924(c) or other harsh mandatory minimum sentencing provisions.[2]

---

[2] *See, e.g.*, *United States v. Vigneau*, 473 F. Supp. 3d 31 (D.R.I. 2020); *United States v. Urkevich*, No. 20-1603, 2019 WL 6037391 (D. Neb. Nov. 14, 2019);  *United States v. Marks*, 455 F. Supp. 3d 17 (W.D.N.Y. 2020); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020); *United States v. Guarascio*, No 5:04-CR-45-2BO, Dkt. No. 243 (E.D.N.C. Nov. 25, 2020) (reducing sentence to time served due to sentencing disparities, as well as defendant's young age, commitment to education and rehabilitation); *United States v. Decator*, 452 F. Supp. 3d 320 (D. Md. 2020); *United States v. Haynes*, 456 F. Supp. 3d 496 (E.D.N.Y. 2020); *United States v. Redd*, 444 F. Supp. 3d 717 (E.D. Va. 2020); *United States v. McDonel*, No. 07-20189, 2021 WL 120935 (E.D. Mich. Jan. 13, 2021); *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020); *United States v. Ezell*, No. CV 02-815-01, 2021 WL 510293 (E.D. Pa. Feb. 11, 2021); *United States v. Hope*, No. 90-cr-06108-KMW-2, 2020 WL 2477523 (S.D. Fla. Apr. 10, 2020); *but see, e.g.*, *United States v. Durham*, No. 07-cr-44-1-PB, 2020 WL 7714745 (D.N.H. Dec. 29, 2020); *United States v. Avery*, No. 2:07-cr-20040-2, 2020 WL 3167579 (W.D. Tenn. June 9, 2020).

## THE BASES FOR THE JOINT MOTION

8.     On January 22, 2021, Mr. Luciano-Mosquera filed a request for a sentencing

reduction within the BOP.  More than 30 days have passed since his submission, and the request

has gone unanswered.  Accordingly, he has exhausted his administrative remedies within the

meaning of 18 U.S.C. § 3582(c)(1)(A), and the Court has jurisdiction to consider this joint

request for compassionate release.

9.     Extraordinary and compelling reasons justify defendant's release.  Multiple

courts, both at the district and at the appellate level, have concluded that the severity of a §

924(c) sentence, combined with other factors, such as the disparity between the sentence

imposed and the sentence a defendant would receive today and a defendant's exceptional

rehabilitative efforts, warrant a sentence reduction under §3582(c)(1)(A)(i).  *See McCoy*, 981

F.3d at 282 (citing cases).

10.     There have been significant changes in the law since Mr. Luciano-Mosquera was

sentenced almost 29 years ago.  As a result, there is good reason to believe that if he were

sentenced for the first time today, he would not receive the additional 151 months in prison on

the non-§ 924(c) counts.  Specifically, in 2005, *United States v. Booker*, 543 U.S. 220 (2005),

rendered the previously-mandatory Guidelines ranges advisory.  More importantly in this

context, in 2017 the Supreme Court made clear that sentencing judges confronted by the

unusually long sentences mandated by § 924(c) are permitted to impose a sentence of a single

day on the non-§ 924(c) counts.  *Dean v. United States*, 137 S. Ct. 1170 (2017).

11.     For these reasons, we respectfully suggest that Mr. Luciano-Mosquera would not

be sentenced to 45 years today.  He would be eligible for a sentence of 30 years and one day, and

given his role in the offense and his absence of a criminal history, such a sentence would be likely.  As the Presentence Report states, his role was limited to off-loading the drugs (PSR at 29) and he was "one of the least culpable" (PSR at 30) participants in the conspiracy.  The downward adjustment he received for a minor role reflected that fact.

12.     Another change in the law that has occurred since the time Mr. Luciano-Mosquera was convicted relates to the *mens rea* requirement for a § 924(c) conviction.  In *Rosemond v. United States*, 572 U.S. 65 (2014), the Supreme Court held that before a defendant can be convicted of aiding and abetting a violation of § 924(c), the government must prove beyond a reasonable doubt his or her *advanced* knowledge that an accomplice would use or carry a firearm during or in relation to the crime, or possess it in furtherance of the crime.  While the machine gun in this case was found under the vehicle beneath which Mr. Luciano-Mosquera and a co-defendant were hiding, "[n]o weapons were seen during the observation of the offloading operation and no weapons were found on any of the defendants."  *United States v. Luciano-Mosquera*, 63 F.3d 1142, 1147 (1st Cir. 1995).  Thus, while the government does not concede that Mr. Luciano-Mosquera *could not* be convicted of the § 924(c) offense today, it acknowledges that the holding in *Rosemond* would require a closer examination of the evidence supporting the § 924(c) charge against him.

13.     Adding to the extraordinary and compelling circumstances of this case is the fact that, despite his minor role in the offenses and marginal involvement in the drug conspiracy as compared to his co-defendants, Mr. Luciano-Mosquera is the last defendant still imprisoned in this case.  Five of his co-defendants pled guilty and served between four and 14 years.  The others who went to trial have since been released.  Edgar Gonzalez Valentin received a sentence similar to the one imposed on Mr. Luciano-Mosquera, but his sentence was commuted by

6

President Barack Obama, and he was released in 2016.  And on December 23, 2020, Pagan-San
Miguel, who received a four-level upward adjustment as the leader of the conspiracy, was
granted compassionate release by Judge Pedro A. Delgado Hernandez on grounds nearly
identical to those presented here.  Mr. Carlos Pagan-San Miguel was substantially more culpable
than Mr. Luciano-Mosquera and was sentenced to a longer term; he was set to be released in
2037, more than ten years after Mr. Luciano-Mosquera's projected release date.

14.     Mr. Luciano-Mosquera's educational record is excellent as well.  He obtained his
GED in 1993 and has completed over 50 educational courses in the past 10 years alone.  He has
worked hard on his rehabilitation and has insisted on staying useful by working within the
institutions where he has been housed.  Presently, he is an orderly, and he has received positive
recommendations from the guards with whom he has worked.  His most recent progress report
observed that Mr. Luciano-Mosquera "maintains a positive attitude and also positive
relationships with staff and other inmates."  He "helps guide younger inmates . . . by showing
them how to conduct themselves properly," and "is also willing to help staff in any physical
duties needed [and] has . . . received numerous recommendation letters from staff."  In sum, all
see Mr. Luciano-Mosquera as an upstanding individual who is ready to rejoin the community
and be a productive member of society.

15.     Mr. Luciano-Mosquera has spent 30 years—60% of his life—in prison.  He is
now 50 years old and has remained devoted to his partner, whom he met in elementary school.
She travels to visit him several times a year and has expressed her willingness to receive Mr.
Luciano-Mosquera into her home and support him upon reentry.  He is also eager to meet his
grandson and spend time with his son, who was only three years old when Mr. Luciano-

Mosquera was arrested, and whom he describes as a wonderful man and his proudest accomplishment.

16.     Though the criminal conduct in this case was serious, we respectfully suggest it is significant that Mr. Luciano-Mosquera was 20 years old at the time of his offenses.  Much has been learned in the intervening decades about the cognitive development of young men and women.  As neuroscience researchers have established, Mr. Luciano-Mosquera's brain— including the regions responsible for self-control and judgment—was still not fully formed back in 1991.  In a study funded by the Department of Justice, researchers opined that, "unlike logical-reasoning abilities, which appear to be more or less fully developed by age 15[,] psychological capabilities that improve decision making and regulate risk taking—such as impulse control, emotion regulation, delay of gratification, and resistance to peer influence—continue to mature well into young adulthood."[3]  The study found that "adolescents and young adults simply do not have the physiological capacity of adults over age 25 to exercise judgment or control impulses" and concluded that policymakers should implement a "categorical rule of youthfulness as a mitigating factor in sentencing."[4]  These scientific findings underscore two important truths about this case.  First, Mr. Luciano-Mosquera's mistakes as a young offender are likely an indication of his youth at the time, not of an indelible personality trait.[5]  Second, there is every

---

[3] James C.  Howell et al., Bulletin 5: *Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know* 17 (2013), https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf.

[4] *Id.* at 18, 29.

[5] *See, e.g.*, MacArthur Foundation Research Network on Law and Neuroscience, *How Should Justice Policy Treat Young Offenders?* 2 LAW AND NEURO (Feb. 2017), http://www.lawneuro.org/adol_dev_brief.pdf.

reason to believe that today, as a 50-year-old man, he has a dramatically reduced disposition toward criminal behavior and has fully aged out of violent crime.[6]  This has been borne out in the time he has already spent in prison; for decades, Mr. Luciano-Mosquera has comported himself with dignity, humility and grace, accepting responsibility for his crimes and proving himself ready and eager to positively contribute to his family and his community.

17.     After considering Mr. Luciano-Mosquera's individual circumstances, including his age at the time of the offenses, his role in the offenses, his lack of a prior criminal history, his exemplary behavior and rehabilitation in prison, the punishment he has endured relative to that of his more culpable co-defendants, and his already substantial period of incarceration, the parties respectfully submit that Mr. Luciano-Mosquera's case presents extraordinary and compelling circumstances, and that his continued incarceration serves no legitimate end.  As such, the parties jointly move this Honorable Court to grant the defendant compassionate release and reduce his sentence to the time he has already served, with all other terms of the judgment remaining intact.

**WHEREFORE**, the United States of America and Mr. Luciano-Mosquera stipulate that there are extraordinary and compelling circumstances justifying compassionate release and respectfully request that the Court grant him a reduction in sentence to term to time served.

---

[6] *See id.*; Rachel Elise Barkow, *Prisoners of Politics* 44–45 (2019) ("Most juveniles discontinue their criminal activity after brief experimentation with it.").

9

    **I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

parties of record.

    **RESPECTFULLY SUBMITTED.**

    In San Juan, Puerto Rico, this 25th day of February 2021.

W. Stephen Muldrow
United States Attorney

*s/Nicholas W. Cannon*
Nicholas W. Cannon
Assistant United States Attorney
USDC-PR No. G01814
Torre Chardon, Ste. 1201
350 Carlos Chardon Avenue
San Juan, PR 00918
Nicholas.Cannon@usdoj.gov
Tel: (787) 282-1804

*s/John Gleeson*
John Gleeson
Marisa Taney
*Debevoise & Plimpton LLP*
* Pro Hac Vice Pending
919 Third Avenue
New York, NY 10022
jgleeson@debevoise.com
mrtaney@debevoise.com
Tel: (212) 909-6000

*s/Jose R. Aguayo*
Jose R. Aguayo
USDC-DPR No. 123301
569 Calle Cesar Gonzalez
San Juan, PR 00918
Joseraguayo@gmail.com
Tel: (787) 765-0814